COPY

1  CHRISTIAN L. RAISNER, Bar No. 133839
   ANDREA LAIACONA, Bar No. 208742
2  LINELLE S. MOGADO, Bar No. 236489
   WEINBERG, ROGER & ROSENFELD
3  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
4  Alameda, California 94501-1091
   Telephone:  510.337.1001
5  Facsimile:  510.337.1023
   E-mail:  courtnotices@unioncounsel.net
6
   Attorneys for Plaintiffs
7
8                 UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10                  (SAN FRANCISCO DIVISION)
11

ORIGINAL
FILED
NOV 1 5 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-File

CV 07 5803

MJJ

12  CHARLES GILCHRIST AND MATTHEW B.      )  No.
    HALLINAN, in their capacities as Trustees of  )
13  APARTMENT EMPLOYEES PENSION           )  COMPLAINT FOR BREACH OF
    TRUST FUND, and APARTMENT             )  CONTRACT, DAMAGES, BREACH
14  EMPLOYEES WELFARE FUND,               )  OF FIDUCIARY DUTY, AND AUDIT
                                          )  (ERISA 29 U.S.C. §1001, et seq., 29
15                Plaintiffs,             )  U.S.C. §185)
                                          )
16      v.                                )
                                          )
17  PROFESSIONAL TECHNICAL SECURITY       )
    SERVICES, INC. (PROTECH), a Delaware  )
18  Corporation,                          )
                                          )
19                Defendant.              )
20

21      Plaintiffs complain of Defendant, and for cause of action allege:

22          **JURISDICTION AND INTRADISTRICT ASSIGNMENT**

23                                 I.

24      This action arises under and is brought pursuant to Section 502 of the Employee Retirement

25  Income Security Act, as amended (ERISA), 29 U.S.C§1132, and section 301 of the Labor

26  Management Relations Act (LMRA), 29 U.S.C. § 185.  Venue properly lies in this district court

27  since contributions are due and payable in the County of San Francisco.

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
Case No. ____

**PARTIES**

II.

At all times material herein, CHARLES GILCHRIST and MATTHEW B. HALLINAN were Trustees of APARTMENT EMPLOYEES PENSION TRUST FUND, and APARTMENT EMPLOYEES WELFARE FUND ("Trust Funds"). At all times material herein, the above-named Trust Funds were, and are, employee benefit plans created by written Trust Agreements subject to and pursuant to section 302 of the Labor Management Relations Act (29 U.S.C. § 186), and were and are multi-employer employee benefit plans within the meaning of sections 3, 4 and 502 of ERISA (29 U.S.C. §§ 1002, 1003 and 1132). The above-named Trust Funds are administered by a Board of Trustees which may bring this action in the name of the Trust Funds pursuant to the express provisions of the Trust Agreements. The above-named Trust Funds and their respective Board of Trustees shall hereinafter be designated collectively as "Plaintiffs".

III.

At all times material herein, Defendant, PROFESSIONAL TECHNICAL SECURITY SERVICES, INC. (PROTECH) (hereinafter referred to as "Defendant"), has been an employer within the meaning of section 3(5) and section 515 of ERISA (29 U.S.C. §§ 1002(5), 1145) and an employer in an industry affecting commerce within the meaning of section 301 of the LMRA (29 U.S.C. § 185).

**ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

IV.

At all relevant times, Defendant was signatory and bound to a written collective bargaining agreement with the SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 1877 (hereinafter "Union"), a labor organization within the meaning of section 301 of the Labor Management Relations Act (29 U.S.C. § 185). Defendant became subject to all the terms and conditions of the Collective Bargaining Agreement (hereinafter "CBA") by virtue of signing the CBA with the Union. A true and correct copy of said CBA, dated January 3, 2000 to November 12, 2003 is attached hereto as Exhibit "A". A true and correct copy of the Agreement

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 2 -

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
Case No. _____

1    and Declaration of Trust for the Apartment Employees Pension Trust and its amendments is

2    attached hereto as Exhibit "B". A true and correct copy of the Agreement and Declaration of Trust

3    Between Service Employees Union Local No. 14 and Apartment Employers Council of

4    San Francisco (establishing the Apartment Employees Welfare Fund) is attached hereto as

5    Exhibit "C".

6                                                        V.

7            The CBA incorporates by reference and binds Defendant to the terms and conditions of the

8    Agreement and Declaration of Trust for the Apartment Employees Pension Trust and its

9    amendments and the Agreement and Declaration of Trust Between Service Employees Union

10   Local No. 14 and Apartment Employers Council of San Francisco (establishing the Apartment

11   Employees Welfare Fund) (collectively referred to herein as the "Trust Agreements"). The Trust

12   Agreements provide for prompt payments of all employer contributions to the Trust Funds and

13   provide for liquidated damages, not as a penalty but as a reasonable attempt to provide for

14   payments to cover the damages incurred by the Trust Funds in the event of a breach by the

15   employer where it would have been impracticable or extremely difficult to ascertain the losses to

16   the Trust Funds. Said Trust Agreements also provide for the payment of interest on all delinquent

17   contributions, attorneys' fees, other collection costs, and for the audit of the signatory employer or

18   employers' books and records in order to permit the Plaintiffs to ascertain whether all benefit

19   contributions have been timely paid as required by the CBA and the law.

20                                                       VI.

21           Sections 23 and 28 of the CBA at Exhibit A demonstrate Defendants' ongoing obligation to

22   pay the amounts due.

23

24                                      **FIRST CLAIM FOR RELIEF**
                                 **(BREACH OF CONTRACT BASED ON AUDIT)**

25                                                       VII.

26

27           Plaintiffs incorporate all preceeding paragraphs as though fully set forth herein.

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
                                                                                    Case No. _____

VIII.

Pursuant to the CBA and the Trust Agreements, an audit of the books and records of Defendant for the period of January 1, 2002 to April 30, 2004 was conducted, which revealed that benefit contributions to the Trust Funds have not been submitted as required by said agreements.

IX.

Demand has been made of Defendant for payment of the amounts determined to be due and owing pursuant to the audit, and Defendant has refused to pay such amounts in total. There is now due, owing and unpaid to Plaintiff Trust Funds from Defendant, pursuant to the audit, benefit contributions in the amount of $31,405.06, plus additional liquidated damages and accrued interest to date.

X.

Plaintiffs are the intended third-party beneficiaries of the Trust Agreements.

XI.

Plaintiffs have complied with all conditions on their part to be performed under the terms of the applicable agreements.

XII.

Plaintiffs are entitled to reasonable attorneys' fees, interest, and other reasonable expenses incurred in connection with this matter due to Defendant's failure and refusal to pay all benefit contributions due and owing pursuant to the terms of the applicable CBA, Trust Agreements, and ERISA section 502(g)(2) (29 U.S.C. § 1132(g)(2).).

**SECOND CLAIM FOR RELIEF**
**(ACTUAL DAMAGES FOR BREACH OF CONTRACT)**

XIII.

Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

XIV.

Defendant has failed, neglected and refused to make timely benefit contributions as required by the applicable CBA and Trust Agreements, and has caused Plaintiffs actual damages.

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 4 -

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
Case No. ____

**THIRD CLAIM FOR RELIEF**
**(DAMAGES AND EQUITABLE RELIEF FOR BREACH OF FIDUCIARY DUTY)**

XV.

Plaintiffs incorporate all preceeding paragraphs as though fully set forth herein.

XVI.

Defendant has failed, neglected or refused to make timely benefit contributions to the Trust Funds as required by the applicable CBA and Trust Agreements.

XVII.

Defendant's neglect or refusal to make timely benefit contributions and reports pursuant to the terms of the above-mentioned agreements constitutes a violation of ERISA section 515 (29 U.S.C. § 1145).

XVIII.

Defendant, in agreeing to the terms and conditions of the aforementioned Trust Agreements, assumed a fiduciary duty to Plaintiffs, which required Defendant to submit timely and accurate reports of hours worked or amounts due, together with payments to the Trust Funds. Defendant exercised control over any contributions due, which are assets of Trust Funds, and Defendant was a fiduciary as defined by ERISA section 3(21), 29 U.S.C. § 1002(21).

XIX.

The actions of Defendant complained of herein constitute a violation of fiduciary duties as defined by ERISA, 29 U.S.C. §§ 1001, et seq.

XX.

Pursuant to the CBA, Trust Agreements, and ERISA, Defendant is liable to Plaintiffs for all interest on the unpaid contributions, liquidated damages, actual damages, attorneys' fees, and other collection costs.

///

///

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 5 -

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
Case No. _____

XXI.

Unless enjoined by this Court, Defendant will continue to fail, neglect, or refuse to remit appropriate benefit contributions to the Trust Funds and thereby cause Plaintiffs irreparable harm for which there exists no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**(AUDIT)**

XXII.

Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

XXIII.

Plaintiffs believe that additional amounts may be due and owing and also pray for an audit for the period May 1, 2004 to present to determine same.

**WHEREFORE**, Plaintiffs pray for judgment against PROFESSIONAL TECHNICAL SECURITY SERVICES, INC. (PROTECH), as follows:

1.   That Defendant be ordered to pay benefit contributions, liquidated damages, and interest;

2.   That Defendant be ordered to pay actual damages;

3.   That this Court issue an Order directing and permanently enjoining Defendant to submit to the Trust Fund, all reports and contributions due and owing by Defendant, plus interest, attorneys' fees, and costs as provided in ERISA sections 502(a)(3) and (g)(2) (29 U.S.C. § 1132(a)(3), (g)(2));

4.   That this Court issue an Order permanently enjoining Defendant for so long as it remains obligated to contribute to the Trust Fund, from failing, neglecting, or refusing to timely submit required monthly contributions reports and payments as required by the terms of the CBA, Trust Agreement and ERISA sections 502(a)(3) and (g)(2), (29 U.S.C. § 1132(a)(3), (g)(2));

5.   That Defendant be ordered to pay attorneys' fees;

6.   That Defendant be compelled submit to an audit between Plaintiffs and Defendant;

7.   That Defendant be ordered to pay costs of suit herein;

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 6 -

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
Case No. _____

8.  That the Court grant such further relief as this Court deems just and proper; and

9.  That this Court retain jurisdiction of this matter to enforce the Order compelling an audit and payment of all amounts found due and owing.

Dated: November *14*, 2007

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: _____
CHRISTIAN L. RAISNER
ANDREA LAIACONA
LINELLE S. MOGADO
Attorneys for Plaintiffs

116462/473807

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA. 94501-1091
510.337.1001

COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND AUDIT
Case No. _____

# EXHIBIT A

# AGREEMENT

# BETWEEN

# PROFESSIONAL TECHNICAL SECURITY SERVICES, INC. (PROTECH)

# AND

# SERVICE EMPLOYEES INTERNATIONAL LOCAL 1877

# JANUARY 3, 2000 – NOVEMBER 12, 2003

**EXHIBIT A**

## PROFESSIONAL TECHNICAL SECURITY SERVICES, INC. (ProTech)
### AGREEMENT

THIS AGREEMENT made and entered into as of January 3, 2000, by and between PROFESSIONAL TECHNICAL SECURITY SERVICES, INC., (ProTech) hereinafter referred to as "Employer" for all security personnel employed at the Embarcadero Center, and SERVICE EMPLOYEES UNION LOCAL # 1877, affiliated with the Service Employees International Union, AFL-CIO, hereinafter referred to as the "Union", acting on behalf of the employees in the classifications hereinafter specified.

### SECTION 1.    UNION RECOGNITION

(a)    The employer recognizes the Union as the sole collective bargaining agency for all employees under the provisions of this Agreement.

(b)    There shall be no discrimination by the Employer or by the Union against employees on account of union membership or union activities. Neither the Employer nor the Union shall discriminate against any employee or applicant for employment on account of race, creed, color, age or sex or for any other reason inconsistent with applicable state or federal law.

### SECTION 2.    UNION MEMBERSHIP, DUES CHECK-OFF AND HIRING

(a)    Membership in good standing in the Union not later than the thirty-first (31st) day following the beginning of employment or not later than the thirty-first (31st) day following the effective date of this Agreement, whichever is later, shall be a condition of employment by this Agreement.

(b)    For purposes of this section only, tender of the initiation fees not later than the thirty-first (31st) day following the date of employment or note later than the thirty-first (31st) day following the effective date of this Agreement, whichever is later, and tender thereafter of the regular monthly periodic dues uniformly required as a condition of retaining membership shall constitute membership in good standing in the Local Union.

(c)    The Employer, upon receipt of a validly executed written authorization form, shall deduct dues and initiation fees from the payroll checks of all employees so authorizing the deduction in an amount certified by the Union, and shall remit such deductions on a monthly basis to the Union.

(d)    When new or additional employees are needed, the Employer shall notify the Union of the number and classifications of employees needed. Applicants for jobs shall be referred by the Union to the Employer for employment on a non-discriminatory basis, without reference to their Union membership or lack of such membership, provided that such referral shall not affected in any way by Union rules, regulations, by-laws, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements.

(e)    The Employer shall be the sole judge of the competency of all applicants and reserves the right to reject any applicant referred by the Union. The Employer agrees within seven (7) days of the date of hiring to notify the Union of the name or names and addresses of the persons hired. Before hiring new employees, the applicant will go through a screening process given by the Employer.

(f)    When a new employee is hired, the Employer shall give such employee a written statement setting forth the Union membership obligation stated in Section A/B above.

### SECTION 3.    NOTICE OF TERMINATION AND LAYOFF

(a)    Employees may be terminated without notice for just cause. The Employer shall give a written warning notice to all employees with one hundred twenty (120) days or more of service, with a copy to the

Union, when terminating such employee for poor job performance or similar reasons. Any employee who feels he or she has been unjustly terminated shall have the right to a grievance procedure hereinafter provided. Termination cases must be taken up within the grievance procedure within five (5) business days from date of termination or right to appeal is lost.

(b)        When an employee is laid off, the Employer shall give the employee seven (7) days' notice in writing or one (1) week's pay in lieu thereof. If an employee is terminated, he or she shall immediately surrender all house keys, equipment and property belonging to the Employer.

## SECTION 4.        VISITS BY UNION REPRESENTATIVE

(a)        The business agent shall be allowed to visit the Employer's building for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The business agent shall report to the Employer's representative before proceeding through the buildings. If prior approval is needed for visitation, the Employer will set up the procedure for visitation. In the event the business agent wishes to go through the buildings, the Employer may send a representative to accompany him. Said business agent shall not interfere with the normal course of work in the building.

## SECTION 5.        SENIORITY

(a)        In case it shall become necessary for an Employer to lay off one or more employees, seniority shall apply, within the classifications. In cases of rehiring, the last employee laid off shall be the first employee rehired. In the filling of vacancies that occur through any means, the Employer agrees to fill said vacancies on the basis of seniority, merit and ability being equal within the classifications excluding promotions. A bid system shall be worked out by mutual agreement to effect such assignments.

(b)        (Loss of seniority) Seniority shall be terminated by discharge for cause, resignation, retirement and failure to return from an authorized leave of absence.

(c)        For promotions, seniority will be given substantial consideration, and where merit and ability are equal the most senior employee will be promoted. The Employer will be the sole judge of merit and ability for the purpose of this subsection (5c) only.

## SECTION 6.        BULLETIN BOARD

The Employer shall provide a bulletin board, conveniently located for the use of the Union in posting notice of official business of the Union. The Union agrees that it will not distribute handbills, posters or other literature pertaining to the affairs of the Union within the building.

## SECTION 7.        EMPLOYER'S FUNDS

(a)        Any employee entrusted with the Employer's funds shall not be held responsible for loss through robbery, fire or other circumstances beyond the employees' control. Employees handling funds shall conform to written instructions issued by the Employer.

(b)        The Employer agrees to pay all fidelity bond premiums when bonds are required by the Employer.

## SECTION 8.        SPECIAL DRESS OR UNIFORMS

If an employee is required or instructed by the Employer to wear a uniform or any specifically designated article of clothing, the Employer shall furnish and maintain such apparel. Employees on their

*********2**

part agree to take good care of such apparel and not to wear same except in the course of their duties during working hours, rest periods and at lunchtime.

## SECTION 9.    DRESSING ROOMS OR LOCKERS

Dressing rooms or lockers shall be provided by the Employer where employees may store their belongings during working hours and change to and from street attire.

## SECTION 10.    NO WAGE REDUCTION

Wages now being paid above the minimum scale herein prescribed shall not be reduced. This applies to the employee, not the job.

## SECTION 11.    WAGE REDUCTION (SUPERVISORS/ASST.)

There will be a wage reduction for all supervisors and assistant supervisors if he/she fails to meet the overall job performance that is required by supervisors. The person in question will have the option prescribed in the following:

- Voluntarily demote themselves to Advance II pay with S/O duties.
- Voluntarily quit.
- or will be terminated by the Employer.

## SECTION 12.    PAY DAYS

(a)     The wages of the regular employees shall be paid every two (2) weeks on Fridays by 5:00 PM.

(b)     If an employee is laid off or his services are terminated for any reason, he or she shall be paid on or before the termination of his last shift. (During business hours only).

(c)     Any employee whose services are terminated may if he or she elects have his/her wages sent to them by mail, addressed as he or she may direct.

## SECTION 13.    WAGES

(a)     The minimum hourly rates of pay shall be as follows:

| CLASSIFICATION | WAGE RATE |
|---|---|
| Trainee I | $10.40 |
| Trainee II | 11.33 |
| Basic | 12.70 |
| *Advanced I | 14.19 |
| Advanced II | 15.47 |
| Asst. Supervisor (Admin. Asst.) | 16.51 |
| Supervisor | 17.72 |

* To meet this classification the Security person must have a working knowledge of three (3) buildings and a working rover in all six (6) buildings. Quarterly employee assessments conducted by shift supervisors and the Account Manager.

Calculation of the hourly wage rates for the cost of living increases due on November 13, 1999, November 13, 2000, November 13, 2001, and November 13, 2002 shall be determined by the use of the wage rates listed above. They shall be increased by the provisions of a cost of living allowance based on the "Revised Consumer's Price Index for Urban Wage Earners and Clerical Workers (U.S. All City Average) published by the Bureau of Labor Statistics, U.S. Department of Labor (1967-100)" referred hereinafter as the "Index". Each year's cost of living increase shall be based on the percentage difference between the Index figure for September of the then current year and that of September of the previous year (e.g. The increase of November 13, 1999 would be the difference between September 1999 and September 1998).

(b)     The following is a break down on qualification and/or eligibility requirements for the above classifications for all employees hired prior to ratification of this agreement on 2/16/99:

Trainees: Will serve a 120 probationary period.

| | |
|---|---|
| Trainee II: | Eligible for basic after 60 days. |
| Basic: | Employee eligible after 180 days time and grade. In addition, the employee will be certified to work in two buildings as a console operator. |
| Advanced I: | Employee eligible after 12 months time and grade. In addition, the employee will be required to be certified in three (3) buildings and the ability to respond to all six (6) buildings as a rover. |
| Advanced II: | Employee is eligible after the first 24 months of employment unless the employee by his/her own initiative and the approval of the supervisor has completed the requirements in a shorter period of time. Employee must be certified to work in three (3) buildings as a console operator and respond to all six (6) buildings a rover. |

All new hires after 2/16/99 will be paid as follows:

| | |
|---|---|
| Trainee: | $10.40 - 120 days Probationary Wage |
| Trainee II: | $11.33 - Eligible after eight (8) months of Full-Time service |
| Basic: | $12.70 - Eligible after twelve (12) months Full-Time service |
| Advanced I: | $14.19 - Eligible after twenty-four (24) months of Full-Time service |
| Advanced II: | $15.47 - Eligible after thirty-six (36) months of Full-Time service |

(c)     A forty cent ($.40) per hour premium shall be paid to employees working between the hours of 6:00P.M. and 6:00A.M.

(d)     A premium of asst. Supervisor wage will be compensated to other backup relief supervisor only when he or she relieves for the supervisor position on any given time or shift. Note: Based on the related field of experience of new employees at time of hire, the employer has the right after discussing same with the Union to start new employee higher than the training rate.

(e)     There shall be a six (6) month probationary period for newly promoted security personnel to the following positions: Shift supervisor/Asst. Shift Supervisor. There shall be a formal training period and program for all new Supervisors and Assistant Supervisors.

SECTION 14.          HOURS OF WORK

(a)     Eight (8) within eight and one half (8 1/2) consecutive hours shall constitute a day's work or ten (10) within ten and one half (10 1/2) consecutive hours shall constitute a day's work. The workday is constituted by the twenty-four (24) hour period beginning at 0000 and ending at 2400 hours. The workweek is constituted as the seven day period beginning at 0000 on Sunday morning and ending at 2400 Saturday night.

*********4**

(b)    Forty (40) hours worked in a period of five (5) consecutive days, or in four (4) consecutive days in the case of ten (10) hour shifts, within seven (7) successive calendar days shall constitute a week's work.

(c)    There shall be a one-half (1/2) hour meal period on the premises within eight (8) hours per shift. No deductions shall be made for such meal period allowance.  All meal periods will be on a "on call" basis.

(d)    Part time employees (flex force) will receive a weekly schedule.  All flex force personnel will be on an on call basis.

## SECTION 15.    WORK SCHEDULE

A weekly schedule shall be posted containing each regular employee's starting and quitting time, work days, days off, which shall not be changed by the Employer without thirty-six (36) hours' previous notice to the employees affected.

## SECTION 16.    OVERTIME

(a)    For any work in excess of a day's work, or for any work in excess of a week's work, or for any work performed on an employee's day off, or on holidays, overtime at the rate of time and one-half shall be paid.  Double time shall be paid for all hours worked in excess of twelve (12) continuous hours in any one (1) workday, and for all hours worked in excess of eight (8) hours on the seventh consecutive day of work.  Any employee working on a holiday listed in Section 20 shall be paid overtime, at the rate of time and one-half, in addition to a day's pay for the holiday.  All overtime shall be computed on the basis of cash enumeration at time and one-half, or double the employee's regular rate of pay.  Overtime shall be assigned equally per shift.  An overtime sign up sheet will be posted.

The "Holdover Policy", shall be used for the purpose of covering the overtime needs of Supervisors after other avenues have been exhausted (e.g. posted overtime in advance, voluntary overtime) then 1) mandatory hold over by schedule, 2) hold over by seniority, 3) hold over by post.

(b)    If an employee is required to work overtime consecutive with his/her day's work, such employee shall be paid for not less than one (1) hour at the overtime rate, whichever is the greater.  Should an employee be called back to work by the Employer at the completion of his day's work, his week's work, or his regular days off or on holidays, he or she shall be paid for not less than four (4) hours at the overtime rate or the time actually worked at the overtime rate, whichever is the greater.

(c)    If at the start of any shift a security post is uncovered with less than the minimum of personnel, then the security officer working that post from the previous shift will be required to hold over for mandatory overtime.  Every effort will be afforded to hold a person who volunteers for the required overtime.

(d)    Notwithstanding the provisions of Section 14 (b) of this Agreement, should an employee be required to work on Thanksgiving Day, Christmas Day or New Year's Day, such employee shall be paid for not less than eight (8) hours at the overtime rate or the time actually worked at the overtime rate, whichever is the greater.

(e)    When an employee calls out sick and is paid sick leave and has previously volunteered and been scheduled for overtime for overtime on his regular days off, that overtime will be reassigned to another employee.  However the Employer may waive this stipulation when mandated by staffing constraints.

*********5**

## SECTION 17.   MINIMUM CALL

(a)      Notice that the services of an employee will not be required on any given day shall be given to such employee not later than the termination of the employee's shift on the preceding day.  If such notice be not so given and such employee shall report for work, he or she shall be entitled to and shall be paid a sum of money equal to four (4) hours' wages, provided, however, an employee working thirty-two (32) hours or more per week shall be entitled to the full weekly wages.

(b)      When an Employer or his representative requests a person to report for work and said person does so report at the time but is not put to work, the Employer shall pay said person four (4) hours of wages.  This rule shall not apply when the Employer wishes to fill a vacancy by interviewing applicants for the job.

## SECTION 18.   LUNCH AND REST PERIODS

All employees will receive a lunch period for one half hour (1/2).  Such lunch periods shall not be set by the Employer sooner than three (3) hours following the commencement of their shift, nor later than six (6) hours following the commencement of their shift.  All employees will receive two fifteen (15) minute breaks during an eight (8) hour shift.  All ongoing practices are at the discretion of the shift supervisor.

## SECTION 19.   VACATIONS

(a)      All employees with less than five (5) continuous years of service will accrue vacation at the rate of two (2) weeks per year.  Vacation time shall be accrued by pay period in the amount of 3.08 hours on a biweekly basis.  New employees will be eligible to take accrued vacation time after 6 months of contiguous employment.

(b)      All employees who have been in the service of the Employer continuously for five (5) years or more shall be entitled to three (3) weeks vacation with pay once each year.  Vacation time shall be accrued by pay period in the amount of 4.62 hours on a biweekly basis beginning at the employee's fourth (4th) anniversary date.

(c)      All employees who have been in the service of the Employer contiguously for ten (10) years or more shall be entitled to four (4) weeks vacation with pay.   Vacation time shall be accrued by pay period in the amount of 6.16 hours on a biweekly basis beginning at the employee's ninth (9th) anniversary date.

(d)      Any employee who terminates shall be given accrued vacation pay.

(e)      Vacations shall be approved by the Employer with notice given by the employee two (2) or more weeks in advance.

(f)      Absence from service of to more than sixty (60) calendar days because of illness, temporary layoff or leave of absence shall not interrupt the continuity of employment for the purpose of this section.  In the event of such an absence of more than sixty (60) calendar days, the pay for the vacation period shall be prorated on the basis of actual weeks worked.

(g)      Severance of employment relations shall not disentitle an employee to vacation with pay when he or she is entitled thereto under this Agreement.

(h)      Any employee receiving vacation pay in excess of those contained in this Agreement shall not have such vacation privilege reduced.

*********6**

(i)    All employees shall upon their request receive their full vacation pay prior to going on vacation, at the rate in effect at the time vacation is taken. The employee must request this in writing by two weeks of start of vacation.

(j)    All military reservists shall submit a quarterly or annual schedule for their reserve time.

(k)    The Employer reserves the right to limit the number of employees taking vacations at the same time in order to maintain operations. (seniority prevails).

(l)    In the event that any of the holidays named herein occur during an employee's vacation, such employee shall be entitled to take an additional day's vacation for such holiday with pay or an additional day's pay in lieu thereof, at the option of the Employer.

(m)    Employees, with employer approval, shall be allowed to take accumulated vacation in eight (8) hour increments, provided a request for such vacation is submitted at least two (2) weeks or more in advance.

## SECTION 20.    HOLIDAYS

(a)    The following days shall be observed as holidays:

| | |
|---|---|
| New Year's Day | Labor Day |
| President's Day | Veteran's Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

No deductions shall be made from the monthly pay on account of any of the above holidays. It is understood that on holidays, the employer shall be permitted to designate the employees to be off, or if he or she desires a skeleton crew to remain on the premises. Employees shall be rotated so that equal opportunity to enjoy holidays shall prevail. An employee whose regular day off falls on a holiday shall be granted an additional day off during the ensuring fourteen (14) days or he or she shall receive pay in lieu thereof at the employee's regular rate of pay. In the event an employee's shift falls within two (2) calendar days, the holiday observance shall be on the shift in which the majority of hours are scheduled. If a holiday falls on a Sunday it shall be observed on the following day, except for Christmas, New Year's Day and Independence Day.

(b)    In additional, each employee shall be granted three (3) floating holidays with pay each year. These floating holidays shall be granted at the first of every year (starting January 1, 1999) and they must be used during that calendar year. The floating holidays (starting in 1999) can not be carried over from year to year unless through no fault of the employee they were unable to be scheduled. The floating holidays do not apply to the employee's first one hundred and twenty (120) days of employment (probationary period). Employees shall be eligible to take a floating holiday after the first six (6) months of employment.

(c)    Employees must submit requests for floating holidays with one week's notice. All floating holidays must be approved by the Employer.

(d)    The holidays recognized in this Agreement shall be observed in conformance with the observances of Federal and State holidays; provided, in the event of conflict between State and Federal observances, holidays shall be observed on the same date observed by the Federal Government.

## SECTION 21.  LEAVE OF ABSENCE

(a)    Leaves of absence for reasonable periods shall be granted by the Employer for reasons of bona-fide illness or other reasons mutually agreed to by the Employer and the employee.  Such leaves of absence shall be without pay except as hereinafter provided.  The Union shall be so notified in writing of said leave of absence.  The employee must be employed with said employer for a minimum of one (1) year to be eligible for said leave of absence.  The leave of absence shall not exceed sixty (60) days.

(b)    Leaves of absence for reasons other than physical disability shall be granted only by agreement between the individual employee and his Employer and shall be recognized only after they are reduced to writing and signed by the employee and the Employer.  Requests for leaves of absence shall be submitted at least two weeks prior to the time being requested.

(c)    Any employee who fails to report for work on expiration of a leave of absence shall be considered as having voluntarily quit.

## SECTION 22.  SICK LEAVE

(a)    Regular employees who work continuously for the same Employer for at least six (6) months shall thereafter be entitled to three (3) paid sick days which will be accumulated to six (6) days per year or one half (1/2 day per month.  Sick leave shall be paid at the rate of eight (8) straight time hours per day and the annual allowance of six (6) days shall be forty-eight (48) straight time hours.  After the first six (6) months of employment, benefits accrue and may be used, based on 1/2 day per month.

(b)    Earned sick leave pay shall be granted only in cases of bona fide illness or accident.  Any employee found accepting or claiming benefits under this Section by reason of false statements or documents shall be subject to disciplinary action.  Notification to the Employer by the employee of his or her intention to return to work on his next assigned shift shall be made by the employee as soon as possible but no later than four (4) hours prior to the start of that shift.

(c)    Earned but unused sick leave benefits may be accumulated for five (5) years.  A regular employee who has worked continuously for six (6) or more years for the Employer and has not used sick leave for the five (5) previous years shall, together with the employee's current year's allowance, be entitled to a maximum of thirty-six (36) days sick leave.  Any employee who has used sick leave shall be entitled to a lesser amount determined by deducting the number of days of sick leave used in the five (5) previous years, but in no event deducting more than thirty (30) days.

(d)    It is the employee's responsibility to call ahead four (4) hours when calling off sick.  The employee in question will speak with the on duty supervisor only to advise of illness.  If the employee does not meet this requirement he or she will not be paid the sick time benefits.

(e)    The Employer may request a doctor's certificate if the sick leave extends beyond two (2) working days.  If the employee does not meet this requirement, the employee will not be paid sick time benefits or allowed to return to work until such certificate is obtained.

(f)    In cases where an employee is eligible to receive disability insurance benefits payments, either under the California Unemployment Insurance Code or comparable voluntary disability insurance plan, the employee shall receive his full disability benefit payment, provided that sum of such disability benefit payment and sick leave pay shall equal but not exceed the employees regular rate of pay.  In applying this provision, the Employer shall prorate an employee's unused sick leave so that it, together with the employee's full disability benefit payment shall equal the employee's regular rate of pay.

**********8**

(g)     The same method of integration shall apply in cases of Workers' Compensation Insurance benefits.

(h)     If an employee is scheduled to work on a holiday and calls in sick, the employee will receive pay for the holiday only.

## SECTION 23.   WELFARE FUND AND PENSION TRUST

(a)     Welfare Fund:  For the purpose of establishing and maintaining hospitalization, medical and surgical care, dental and group, and group life insurance programs, the Employer shall contribute to the General Employees Trust Fund the following sums for all employees covered by this Agreement (having worked 70 hours or more in the previous month):

> Effective date:  February 16, 1999............ $324.62 (composite)
> New hires first eight (8) months................$177.87 (individual only)

Before the tenth day of each month, the Employer shall make irrevocably the required payments for the preceding calendar month, and such payments shall be made on behalf of each employee who has worked seventy (70) or more straight-time hours for said Employer during the preceding calendar month.  The Welfare Fund shall be administered under and by virtue of that certain Agreement and Trust Indenture (as amended) entered into on February 1, 1973 between General Employees Trust Fund and Service Employees Union Local # 1877.  The Employer hereby accepts the terms of said Agreement and Declaration of Trust and agrees to be bound by all of the provisions thereof as amended, and hereby acknowledges prior receipt of a copy thereof.  The level of benefits existing as of February 16, 1999 shall be maintained for the life of this Agreement.  If the carrier raises the premiums to the Welfare Fund for the same benefits mentioned above, and if the Trustees determine that an increased employer contribution is necessary to maintain said benefits, the Employer shall pay such increases as certified.

(b)     Pension Trust:  For the purpose of establishing and maintaining a pension plan, the Employer shall contribute to the Apartment Employees Pension Trust the following sum for each straight-time hour worked by employees hired prior to 2/16/99, covered by this Agreement for employees hired after 2/16/99 such payments are due 6 months after the employees date of hire:

> Effective Date:  November 13, 1998.......................$.75 hour
> Effective Date:  January 1, 2003............................. $.80 hour

Before the tenth day of each month the Employer shall make irrevocable the required payments for the preceding calendar month, and such payments shall be made on behalf of each employee for all straight-time hours worked for said Employer during the preceding calendar month.  The pension plans shall be administered under and by virtue of that certain Agreement and Declaration of Trust executed on December 29, 1955, between Apartment Employers Council of San Francisco and Service Employees Union Local # 1877.  The Employer hereby accepts the terms of said Agreement and Declaration of Trust and agrees to be bound by all of the provisions thereof as amended, and hereby acknowledges prior receipt of a copy thereof.

(c)     Regulations applicable to the Welfare Fund, and Pension Trust:
     (1)     Paid vacation, holidays and sick leave are considered as hours worked in computing contributions.
     (2)     If an employee is absent from work because of a bona fide illness or injury, minimum contributions for coverage shall be made on his behalf by the Employer during such absence for a period of not less than three (3) months.  No employer shall be required to make contributions in excess of three (3) months during any calendar year during such absence unless he or she so elects.

*********9**

(3)     The service record of employees for the purposes of eligibility for welfare and pension benefits and the requirements that an Employer make contributions on their behalf as provided, shall not be broken by reason of change of ownership of a building covered by this Agreement or a subsequent Agreement.

(4)     Any changes in the Welfare Fund that may be agreed to between the Union and the General Employees Trust Fund or the pension by the Apartment Employees Pension Trust during the life of this Agreement shall be accepted and adopted by the Employer of this Agreement at the time and in the same manner as such changes are made by the General Employees Trust Fund and the Apartment Employees Pension Trust of San Francisco.

## SECTION 24.    FUNERAL LEAVE

(a)     In the event of a death in the immediate family of an employee covered by this Agreement, who has at least one hundred twenty (120) days of service with his Employer, he or she shall upon request be granted such time off with pay as is necessary to make arrangements for the funeral and attend same, not to exceed five (5) regularly scheduled working days.  This provision does not apply if the death occurs during the employee's paid vacation, or while the employee is on leave of absence, lay-off, or sick leave. For the purpose of this provision, the immediate family shall be restricted to Father, Mother, Brother, Sister, Spouse, Child, current Mother-in-Law, current Father-in-Law, and blood Grandparents.  At the request of the Employer, the employee shall furnish a death certificate and proof of relationship.  Funeral leave applies only in instances in which the employee attends the funeral or is required to make funeral arrangements, but is not applicable for other purposes such as settling the estate of the deceased.

## SECTION 25.    JURY DUTY

(a)     When an employee covered by this Agreement who has completed the one hundred twenty (120) day probationary period is called for jury services in any municipal, county, state or federal court, he or she shall advise the Employer upon receipt of such call, and if absent from his work for such service shall be reimbursed as provided herein for any loss of wages while actually performing such services, provided he or she exhibits to the Employer his properly endorsed check or voucher he or she received for such service and permits the Employer to copy same.  The amount the employee shall be reimbursed shall be determined by subtracting the amount he or she received as per diem for such service from the amount he or she would have earned at his regular straight-time hourly rate during the regular working hours he or she missed while performing such service, it being understood that such reimbursement is limited to a maximum of twenty (20) days annually.

(b)     If the employee is excused from jury duty before the completion of the first half of his work shift (less than four (4) hours), the employee is required to report for work within a reasonable time after he or she is excused from jury duty.  If he or she returns to work within a reasonable time and completes the second half of his work shift on the day of jury duty, he or she will receive eight (8) hours pay at his base rate less jury duty fees.  If he or she does not return to work when excused before the completion of the first half of his work shift or has served less than four hours of jury duty, he or she will be subject to disciplinary action by the Employer and will be paid only for the time actually spent on jury duty and not the remainder of the day's pay.  If he or she serves in excess of four (4) hours of jury duty prior to or coinciding with the normally scheduled shift, the employee is not required to report for work that workday and will receive eight (8) hours pay at his base rate less jury duty fees.  In any event, employee must bring to work the "court voucher" which certifies time spent on jury duty for that day.

## SECTION 26.    STRIKES

There shall be no strikes, work stoppages, job action or lockouts during the life of this Agreement.  All disputes and grievances shall be settled as quickly as possible by the grievance procedure provided in Section 27.  In the event of a labor disturbance, strike, picketing, or concerted action of any

********10**

nature by any other labor group or the members thereof or any protest group involving the Employer's property or operations or the operations of the tenants of the Employer, employees covered by this Agreement will remain on the job and continue to perform their duties as Security Personnel. Employees will continue to report to work as directed during any such disturbances, crossing any picket or protest lines that may be established if necessary to do so. Provided however, that said employees will not be used as strike breakers, and specifically, will not be required to perform the regular functions of other Employees, except to the extent necessary for the protection of life, limb and property.

## SECTION 27.    GRIEVANCE PROCEDURE

Step I

(a)    Any and all disputes and grievances of the Employer, employee or the Union that may arise with reference to the provisions of the Agreement or the enforcement thereof must be initiated with the Employer or the Union as the case may be within thirty (30) days of the alleged dispute or grievance except as provided for under Section 3(a) of this Agreement which specifies five (5) business days for terminations.

Step II

(b)    Any and all of the disputes not settled in Step I shall be referred to a Board of Adjustment upon written request of either party within ten (10) business days. The Board of Adjustment shall consist of two (2) representatives of the Union and two (2) representatives of the Employer.

Step III

(c)    In the event that any matter submitted to the Board of Adjustment cannot be settled within ten (10) business days, the issue of dispute may be submitted for disposition to an impartial arbitrator. The decision to go to arbitration must be submitted in writing to either party within fifteen (15) business days or the matter shall be considered dropped. The impartial arbitrator shall be selected by agreement between the parties. Any decision made by a majority of the Adjustment Board or the impartial arbitrator shall be final and binding upon both parties. Any expense as a result of arbitration shall be borne one-half by the Union and one-half by the Employer. Neither the Adjustment Board nor the impartial arbitrator shall have authority to negotiate, alter or change this Agreement.

(d)    In the event of a willful failure by either party to appear before the Arbitrator after written notice of time and place of hearing, the Arbitrator is hereby authorized to render his decision upon the evidence produced by the party appearing. Each party shall bear all costs of presenting its case to the Arbitrator. The arbitrator's fee and all incidental expense of the arbitration shall be borne equally by the parties hereto.

Probationary Period

(e)    There shall be a one hundred twenty (120) calendar day probationary period for all new employees. During the probationary period the Employer may terminate the employment of the probationary employee without cause. The probationary employee shall have no recourse to the Adjustment Board, Grievance Procedure nor Arbitration in the event of termination. Promoted employees shall also serve a ninety (90) calendar day probationary period. During the probationary period the Employer shall have the right to return the promoted employee to the formerly held position of the employee. The employee shall have no recourse to the Adjustment Board, Grievance Procedure nor Arbitration for the demotion only. The employee, in the event of demotion shall retain all seniority rights in the formerly held position.

# SECTION 25.   TERM OF AGREEMENT

This Agreement shall become effective as of January 3, 2000 and shall continue in full force and effect through November 12, 2003.  If neither party serves written notice of its desire to terminate, change or modify this Agreement sixty (60) days prior to the date of expiration, it shall be renewed for the succeeding year and from year to year thereafter in like manner.

PROFESSIONAL TECHNICAL
SECURITY SERVICES, INC.
(PROTECH)


Parry L. Abbey
President

Date: 4/14/00


SERVICE EMPLOYEES
INTERNATIONAL UNION,
LOCAL 1877


Tom Csekey
Vice President

Date: 3/29/00

*********12**